OPINION OF THE COURT
Lewis R. Friedman, J.
This case presents a novel application of the doctrine of “stale” nonpayment summary proceedings under the RPAPL. The respondent seeks to require a landlord who has commenced a holdover proceeding, based on an alleged breach of a material obligation of the lease, to accept tenders of rent or “use and occupation” during the course of that proceeding. According to the respondent the landlord’s failure to accept payments tendered after the holdover petition was served operated as a forfeiture of the landlord’s right to claim the back rent in a nonpayment proceeding commenced after the original case was dismissed. The respondent’s request to extend the case law concept of “staleness” or laches must be rejected.
The petition here, which was later amended, sought 12 months’ rent at the time it was filed. The respondent relied on a line of cases, that has apparently held that a landlord who allows a substantial period to elapse before filing a summary proceeding has lost the right to resort to a *359 summary proceeding under RPAPL article 7 to support his claim that the rent sought here is too “stale” to be the subject of a nonpayment proceeding under RPAPL article 7. (See, e.g„, Gramford Realty Corp. v Valentin, 71 Misc 2d 784; City of New York v Betancourt, 79 Miscc 2d 907 [App Term, 1st Dept.]; Antillean Holding Co. v Bindley, 76 Misc 2d 1044; New Approach Rehabilitation Corp. v Purdie, NYLJ, Dec. 29, 1980, p 13, col 5 [App Term, 2d Dept]; Maxwell v Simons, 77 Misc 2d 184.) The petitioner, on the other hand, cites cases such as 269 Assoc, v Yerkes (113 Misc 2d 450), which attack the Gramford line of authority; it also argues that its claim is not stale since the parties had been litigating a holdover proceeding for six of the months at issue. The respondent in an ingenious application of statutory construction replies that RPAPL 711 (subd 1), which authorizes the acceptance of rent after a holdover petition has been filed, makes the failure to accept tendered rent fatal to a subsequent nonpayment proceeding.
The Gramford line of cases appears to be inconsistent with each other; there is no single analytical thread which can be followed through them. Judge Saxe in 269 Assoc, v Yerkes (supra), and Judge Klein in Dedvukaj v Madonado (115 Misc 2d 211) both of this court have recently discussed Gramford (supra) and its progeny and have convincingly shown that there is a lack of uniformity in deciding what the rule is or what is its proper operation. Gramford itself, for example, described the staleness rule as one which was based on the inherent power of the court to prevent outrageously unfair, unjust results. That is, where a landlord has intentionally refused to pursue its remedy so that the tenant will ultimately be unable to satisfy a judgment, resort to a summary proceeding is barred as a result of the court’s sense of fairness. At the other extreme of the case lav/ is Maxwell v Simons (supra), which attempted to create an absolute three-month limit on the amount of rent which could be a predicate of a summary proceeding. Despite the attempted reliance on Maxwell by numerous practitioners in this court, the absolute time limit set up in Maxwell v Simons (supra), has been rejected at least in the First Department. (See, e.g., Trustees of C.I. Mtge. Group v *360 NYILR Ltd., NYLJ, Dec. 8, 1978, p 6, col 3 [App Term, 1st Dept]; cf. Antillean Holding Co. v Lindley, supra.)
The more recent appellate cases are consistent only in holding that the delay must be examined in each instance to determine whether it is being used to manipulate the tenant so as to create an eviction. (See, e.g., 177 East 90th St. v Devine, NYLJ, March 30, 1982, p 6, col 1 [App Term, 1st Dept]; Schwartz v Abt, NYLJ, May 4, 1978, p 5, col 4 [App Term, 1st Dept]; Thunderbird Realty Co. v Ahn, NYLJ, Nov. 19,1981, p 11, col l [App Term, 1st Dept]; City of New York v Betancourt, supra.) It appears, therefore, that whatever the analytical basis for Gramford (supra) and its progeny may be — whether public policy, laches, waiver, or bad faith application — if there is good cause for delay there is no basis for precluding a landlord’s resort to a summary proceeding under the RPAPL.
In the case at bar, I find that there is good cause for the landlord’s delay — a landlord has the right to complete a holdover proceeding before accepting any rent. That conclusion is based on an analysis of the law of waiver and RPAPL 711 (subd 1).
Normally, once a landlord knows of a possible material breach of a lease, its collection of rent from a tenant will constitute ,a waiver of that breach. (See, e.g., Le Tam Realty Corp. v Hand, NYLJ, July 16,1980, p 10, col 2 [App Term, 1st Dept];Ilfin Co. v Gatto, NYLJ, Nov. 26,1979, p 6, col 1 [App Term, 1st Dept].) The landlord with knowledge of a material breach of a lease is, as a practical matter, given two choices: (1) waive the breach, accept the rent and continue the tenancy, or (2) terminate the tenancy in accordance with the lease’s terms and, if necessary, commence a holdover proceeding. The second course, obviously prohibits the acceptance of rent after the lease is terminated. (See, e.g., Maidman Props, v Rebuilt Mach. Corp., 54 NYS2d 263.) However, in 1946 the Legislature determined to overrule cases such as Maidman (supra), by amending the then Civil Practice Act (L 1946, ch 684) to allow rent to be accepted “during” a holdover proceeding; that meant that after the petition was served, indeed, even after a final judgment, the landlord could accept rent. (See, e.g., Empire State v Graceline Handbags, 192 Misc 679; Leonis v Am *361 brosino, 188 Misc 820 [App Term, 1st Dept]; Greenberg v Karnetsky, 188 Misc 674 [App Term, 2d Dept].) The current codification of the statue, RPAPL 711 (subd 1) provides, in pertinent part: “A special proceeding may be maintained under this article upon the following grounds: 1. The tenant continues in possession of any portion of the premises after the expiration of his term without the permission of the landlord * * * Acceptance of rent after commencement of the special proceeding upon this ground, shall not terminate such proceeding nor affect any award of possession to the landlord or the new lessee, as the case may be.”
Thus, the petitioner here could have accepted tenant’s rent tenders without waiving the alleged breach of the lease after December 30, 1981 had it chosen to. (See, e.g., Guy v Furman, 4 Misc 2d 564 [App Term, 1st Dept]; Melroy Realty Corp. v Siegel, 60 Misc 2d 383.) The question, then, is whether it must. That question appears not to have been discussed in the reported cases.
The law generally does not require a person to perform an act which would benefit solely the actor if there is any risk to the actor. That is, it is not reasonable to require persons to undertake risks. Since the provisions of RPAPL 711 (subd 1) may not completely protect the landlord’s rights, the landlord need not rely on it. There is a possibility, however slight it may ultimately turn out to be, that the acceptance of rent under that section could result in waiver. For example if, after the acceptance of rent, the holdover petition was dismissed for failure to acquire personal jurisdiction over the tenant (a result which occurs with an unreasonably high degree of frequency in this court), the tenant might later argue that the landlord, who obviously had knowledge of the breach of the lease since he had commenced an action based upon it, knowingly accepted rent and waived the breach since no petition was validly “commenced”. Although that scenario appears not to have been decided in reported cases the risk of a result adverse to the landlord exists. A further risk is that the acceptance of rent at the. amount set in the lease might operate as a waiver of a subsequent claim for a use and occupation allowance in excess of that amount, if the landlord were to be successful in the holdover proceeding. *362 (Cf. RPAPL 753, subd 2.) Again there is a litigation risk to a landlord. The respondent has proven no possible benefit to himself or any other tenant if the tendered rent was accepted. Nor has he offered any policy reason for imposing any risk on the petitioner. On the other hand, there are sound public policy reasons for the avoidance of complicated new issues in landlord-tenant litigation. The “summary” proceedings under the RPAPL are far from summary as any observer of this court can see; the law is far from the simple proceeding contemplated by the statute. Counsel for either landlords or tenants should not be required to hazard a guess at the outcome of novel legal questions when rent is tendered during a holdover proceeding. I find, therefore, that a delay of collecting rent is reasonable during a prior holdover proceeding. This result appears to be consistent with the Appellate Term’s conclusions in Thunderbird Realty Co. v Ahn (supra), and 177 East 90th St. v Devine (supra), where it found “ ‘vexatious litigation’ ” and the parties’ “continuous contention” in court to be a valid reason for refusing to accept rent. I find that it would serve future cases best be decided simply by excluding, as a matter of law, from a Gramford claim, the time from the notice to cure to the final decision in a holdover proceeding.
A similar policy argument applies to any effort to require a tenant to apply for a “use and occupation” order during the holdover proceeding. Clearly such an application is discretionary with the landlord and its failure to make it should not prejudice it.
On the record here respondent completely failed to prove at trial, his assertions of laches or of bad faith by the petitioner. If respondent was “lured into a trap” by the landlord no proof of this was tendered. Nor was there proof of any injury to respondent.
Respondent also claims that he is entitled to a rent abatement for a lack of services and breach of warranty of habitability. I find that the credible evidence offered at the trial did not establish any abatable conditions in the respondent’s apartment. Similarly I find no proof that the respondent had given petitioner sufficient notice of his intention to repair the front door himself so as to invoke *363 the “repair and deduct” line of authority. There was no credible proof of the landlord’s willful refusal to make the repairs. (Cf. Katurah Corp. v Wells, 115 Misc 2d 16 [App Term, 1st Dept].)
Accordingly the court awards petitioner a judgment of possession and $3,337.70 for rent not paid through April 30, 1983. Petitioner is also awarded the $160 sought for attorney’s fees. Based on the time spent in this court alone, the amount is reasonable. The respondent’s counterclaims Nos. 1, 2, 3, 5 and 6 are dismissed for failure of proof. Counterclaim No. 7 was dismissed after trial by consent. Counterclaims Nos. 4, 8, 10 and 11 were previously dismissed on motion.
The parties have stipulated that petitioner owes respondent $65 as interest on the respondent’s rent security deposit and respondent shall have judgment on counterclaim No. 9.